IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v. Case No. 18-cr-114-jdp

THOMAS A. CALDWELL,

Defendant.

---

GOVERNMENT'S SENTENCING MEMORANDUM

---

Thomas Caldwell will be sentenced this Thursday, November 1, 2018, for selling firearms without a Federal Firearms License. Thirteen firearms that Caldwell sold were recovered at crime scenes, most tragically, police found a Glock sold by Caldwell in a downtown Chicago stairwell after Chicago Police Commander Paul Bauer was murdered by a four-time felon on February 13, 2018.[1] Former Chicago Police Department First Deputy Superintendent John Escalante, and boyhood friend of Commander Bauer, would like to briefly address the Court at sentencing on behalf of the Bauer family.

[1] See https://www.chicagotribune.com/news/local/breaking/ct-met-police-commander-paul-bauer-autopsy-20180315-story.html

Understanding the seriousness of Caldwell's criminal conduct, from at least December 15, 2015 (PSR ¶ 7) to May 31, 2018 (PSR ¶ 32), requires an understanding of the two important roles that Federal Firearms Licensees (FFLs) play in protecting the public. First, FFLs screen prohibited persons from acquiring firearms. Before selling a firearm, FFLs require would-be purchasers to fill out an ATF Form 4473. (See attached). The form is designed to both warn and exclude. Question 11(a) warns purchasers against, and requires them to affirm that they are not, buying a gun for another person. Questions 11(b) through 12(c) are intended to warn and exclude prohibited persons—e.g., felons, those under indictment, and those convicted of domestic violence crimes—from obtaining firearms.

Questions 19-21 on page two of the attached ATF Form 4473, further illustrate how FFLs help to protect the public. After the would-be purchaser completes the ATF Form 4473, the FFL contacts the National Instant Criminal Background Check System (NICS) by telephone or Internet. Except for Christmas, the system is available 17 hours a day, seven days a week.[2] NICS employees access three different databases, including the National Crime Information Center (NCIC), to determine eligibility. If the person is denied, the FFL will not sell the weapon. Since 1998, NICS employees have conducted more than 230 million checks and have denied approval for more than 1.3 million transactions. (See link for footnote 2).

[2] https://www.fbi.gov/services/cjis/nics

Second, FFLs protect the public by maintaining records showing to whom firearms were sold. FFLs must maintain records of the firearms acquired and sold using ATF-approved paper or computer logs. When a gun is transferred, licensed dealers maintain copies of the completed Forms 4473 for at least twenty years. When an FFL retires or relinquishes their license, they must send these records to the ATF Out-of-Business Records Center. Such records often allow ATF to trace firearms found at a crime scene from an FFL transfer to the person who possessed the crime at the time of the offense.[3]

On December 15, 2015, ATF unambiguously warned Caldwell that he had to stop selling firearms without a license. Although Caldwell knew what was required of him, he did not complete the FFL application because it was "too much paperwork." (PSR ¶ 27). Caldwell's decision, and the way he conducted his business, thwarted the FFL law's public safety purposes. One day after Caldwell sold a Glock pistol, it was found in possession of a Milwaukee felon drug dealer (PSR ¶ 7); five days after selling a Smith and Wesson pistol, it was recovered by law enforcement (PSR ¶ 13); two weeks after selling a Taurus pistol, it was found in possession of a Madison felon drug dealer. (PSR ¶ 13). Ten other firearms sold by the defendant were recovered by police but had longer "time to crime" periods between Caldwell's sale and the recovery.

[3] A common scenario involves a firearm found in a home. The occupant, Mr. C, a felon, denies owning the gun. Using the firearm serial number, ATF determines that Mr. A, an FFL, sold the gun. Mr. A's records show that he sold the gun to Mr. B. ATF tracks down Mr. B who says that he sold the gun to Mr. C, an acquaintance.

While the "time to crime" dates show that Caldwell had likely become a favorite for prohibited persons, they do not tell the full picture. Guns, in the hands of dangerous people, are dangerous forever. Caldwell did not kill Chicago Police Commander Bauer and he should not held accountable for doing so. The way Caldwell sold firearms, however, made a tragedy almost inevitable. For that reason, the United States requests a sentence within the advisory guideline range: 37-46 months.

Dated this 30th day of October 2018.

Respectfully submitted,

SCOTT C. BLADER
United States Attorney

By: /s/

TIMOTHY M. O'SHEA
First Assistant U. S. Attorney

CHADWICK M. ELGERSMA
Special Assistant U. S. Attorney